STATE of Minnesota, Respondent,

v.

Chad Allen ROURKE, Appellant.

No. A07–937.

Supreme Court of Minnesota.

Oct. 22, 2009.

Lori Swanson, Attorney General, St. Paul, MN; Charles C. Glasrud, Stevens County Attorney, Morris, MN; and Thomas R. Ragatz, Special Assistant Stevens County Attorney, St. Paul, MN, for respondent.

Steven P. Russett, Assistant State Public Defender, St. Paul, MN, for appellant.

O P I N I O N

ANDERSON, G. BARRY, Justice.

Appellant Chad Rourke and E.B. began dating in 1998, while E.B. was in high school. They had two children together. Throughout the relationship, Rourke physically abused E.B., injuring her on several occasions. E.B. and Rourke separated and resumed the relationship several times. By early 2003, E.B. had once again ended her relationship with Rourke, but Rourke, along with E.B., was still living at E.B.'s mother's house in Morris, Minnesota.

On January 28, 2003, E.B., driving her van, went to pick up Rourke at a friend's house in Morris. When E.B. arrived, Rourke ordered her into the passenger's seat, took the keys, and drove around Morris while threatening to kill her. Rourke was speeding and driving erratically. E.B. feared for her life.

Rourke sped through a stop sign and crashed into a pole. Rourke attempted to pull E.B. from the van to make it look as if she was the driver. Because her legs were pinned in the car, he was unable to do so, and he left the scene. E.B. suffered shattered bones in her ankle, requiring placement of screws and a metal plate in her leg.

Rourke pleaded guilty to first-degree assault, Minn.Stat. § 609.221, subd. 1 (2008) (prohibiting a person from assaulting another and inflicting great bodily harm). He agreed to a maximum sentence of 128 months, an upward departure from the presumptive 98–month sentence. He admitted he drove E.B.'s van in a reckless manner and that he did so with the intent of scaring and intimidating her. He also admitted that the collision caused her great bodily harm. In exchange for his plea, the State dismissed five other charges and agreed not to seek a sentence longer than 128 months.

Rourke had previously been convicted, on two separate occasions, of assaulting E.B. The district court imposed the maximum sentence permitted under the plea agreement, citing Rourke's two prior convictions involving E.B.; Rourke's abuse of his position of power and control over her; the particular cruelty of the offense; and the plea agreement.

In Rourke's first appeal, *State v. Rourke* (*Rourke I*), 681 N.W.2d 35, 38–41 (Minn. App.2004), the court of appeals rejected his argument that there were no substantial and compelling reasons to impose more than the presumptive sentence. We granted review, vacated the decision of the court of appeals, and remanded for consideration in light of *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In *State v. Rourke* (*Rourke II*), No. A03–1254, 2005 WL 525522, at *2– 3 (Minn.App. Mar. 8, 2005), the court of appeals concluded that Rourke's upward durational sentencing departure violated his right to a jury trial under *Blakely.* Consequently, it remanded for resentencing consistent with *Blakely.*

On remand, the State provided Rourke notice that it intended to submit the following aggravating sentencing factors to the jury at the *Blakely* trial: (1) plea agreement, (2) particular cruelty, (3) abuse of a position of power, and (4) vulnerability of the victim. Following a pretrial hearing, the district court concluded that only the factors of particular cruelty and vulnerability of the victim would be submitted to the jury because the sentencing guidelines' list of aggravating sentencing factors did not include plea agreements or abuse of a position of power. The State did not file a pretrial appeal challenging the ruling of the district court.

A *Blakely* trial was held in February 2007. At the close of the State's case, Rourke made a motion that the district court described as "the equivalent of a judgment of acquittal" arguing that the particular cruelty factor should not be submitted to the jury because it was unconstitutionally vague. The district court reserved its decision on Rourke's motion and submitted the following special interrogatories to the jury: (1) Was E.B. treated with particular cruelty on January 28, 2003? and (2) Was E.B. particularly vulnerable on January 28, 2003, due to age, infirmity, reduced physical capacity, or reduced mental capacity? The district court denied the State's request for a jury instruction defining "particular vulnerability" as including repeated attacks and intimidation by Rourke and a level of extreme and escalating ongoing violence, threats to kill, and efforts to control and intimidate E.B. Although the district court declined to include the requested definition in the jury instructions, the State was permitted to argue this theory to the jury.[1] The jury found that E.B. was

---

1. For example, the State argued to the jury that the long history of abuse made E.B. phys- ically "infirm."

treated with particular cruelty but that she was not particularly vulnerable.

After the *Blakely* trial, the district court issued a written order granting Rourke's motion for judgment of acquittal and vacating the jury's finding of "particular cruelty." In its order, the district court explained that the term "particular cruelty" was unconstitutionally vague and that courts "have no authority" to provide jurors a definition of "particular cruelty." The district court sentenced Rourke to 103 months, the high end of the presumptive range.

The State appealed this sentence. In *State v. Rourke* (*Rourke III*), No. A07–937, 2008 WL 2105445, at *3–5 (Minn.App. May 20, 2008), the court of appeals reversed the district court's conclusion that the aggravating factor "particular cruelty" is unconstitutionally vague. The court of appeals also held that the district court abused its discretion both in concluding that the aggravating factor "abuse of a position of power" could not be submitted to the jury and in refusing to define the aggravating factor "particular vulnerability" to include vulnerability created by repeated attacks, intimidation, and extreme and escalating ongoing violence. *Id.* at *6–7.

The court of appeals remanded for a new *Blakely* trial and resentencing, with "particular cruelty" to be defined to the jury consistent with *State v. Weaver*, 733 N.W.2d 793, 803 (Minn.App.2007) (defining "particular cruelty" as conduct "significantly more cruel" than that usually associated with the offense of conviction, and noting instances in which "particular cruelty" was found, including setting fire to a victim who was still alive, leaving a victim to die alone without notifying emergency personnel, degradation of the victim and gratuitous infliction of pain), *rev. denied*

(Minn. Sept. 18, 2007). *Rourke III*, 2008 WL 2105445, at *6. The court of appeals also held that, although the district court improperly defined "particular vulnerability," retrial on that aggravating factor would violate the constitutional prohibition against double jeopardy because the jury had already rejected it. *Id.* at *7.

We granted Rourke's petition for review on the issue of whether the Minnesota Sentencing Guidelines' particular cruelty aggravating sentencing factor is unconstitutionally vague and whether the State may seek post-trial appellate review of a district court's *Blakely* trial rulings. We also granted the State's petition for cross-review on the double-jeopardy issue.

## I.

 A criminal law may be unconstitutionally vague for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement. *Hill v. Colorado*, 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000); *see also State v. Bussmann*, 741 N.W.2d 79, 83 (Minn.2007).

 "So too, vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." *United States v. Batchelder*, 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). However, the sentencing uncertainty caused by two statutes that prohibit the same conduct, but prescribe different penalties, does not render the statutes unconstitutionally vague as long as each statute unambiguously specifies the activity proscribed and the penalty available on conviction.[2] *Id.*

---

2. The dissent cites *Batchelder* to support its claim that we should apply the vagueness

A statute that provides a judge discretion in determining a defendant's sentence is not unconstitutional unless it violates the prohibition against cruel and unusual punishment. *State v. Christie*, 506 N.W.2d 293, 301 (Minn.1993). In *Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), the United States Supreme Court held that the prohibition against cruel and unusual punishment was triggered when a judge imposed a death sentence pursuant to a statute that provided standardless sentencing discretion.

We have previously rejected an argument that the *Godfrey* decision requires us to apply the vagueness doctrine to the Minnesota Sentencing Guidelines' standards for sentencing departures. *State v. Givens*, 332 N.W.2d 187, 189–90 (Minn. 1983). In *Givens*, we explained that "more routine sentencing decisions—those not including the death sentence" were not contemplated by the *Godfrey* decision.[3] *Id.* at 190.

The Eighth Circuit has reached a similar conclusion regarding the federal sentencing guidelines. *United States v. Wivell*, 893 F.2d 156, 160 (8th Cir.1990). In *Wivell*, the court explained that aggravating factors in the federal sentencing guidelines are not subject to vagueness challenges because the federal guidelines "do not define illegal conduct: they are directives to judges for their guidance in sentencing convicted criminals, not to citizens at large."[4] *Id.* at 160. Citing *Lockett v. Ohio*, 438 U.S. 586, 603, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the Eighth Circuit further explained that "there is no constitutional right to such directives." *Wivell*, 893 F.2d at 160. The Eighth Circuit recently reaffirmed the *Wivell* holding in *United States v. Jefferson*, 267 Fed. Appx. 483, 484 (8th Cir.2008) (explaining that the post-*Blakely* decision to make the federal sentencing guidelines advisory did not alter its conclusion in *Wivell* that aggravating factors in the federal sentencing guidelines are not subject to vagueness challenges).

Rourke argues that *Givens* and *Wivell* are not controlling in this case because they were decided before *Blakely* required a district court to submit the aggravating factors listed in the Minnesota Sentencing Guidelines to a jury. Rourke also takes the position that the district court's sub-

---

doctrine to the sentencing factors listed in Minn. Sent. Guidelines II.D. But *Batchelder* is not persuasive authority on the issue because it did not involve a sentencing departure provision and because it suggests that the Constitution does not require sentencing certainty.

3. Before our decision in *Givens*, we considered a defendant's claim that the dangerous offender statute, Minn.Stat. § 609.16 (1978), was unconstitutionally vague because it allegedly permitted the "use of unfettered discretion rendering the statute standardless." *State v. Adams*, 295 N.W.2d 527, 536 (Minn. 1980). Without discussing the threshold issue of whether we should apply the vagueness doctrine, we held that the statute was not unconstitutionally vague as applied to the defendant. *Id.*

4. The Eighth Circuit reasoned:

Because there is no constitutional right to sentencing guidelines—or, more generally, to a less discretionary application of sentences than that permitted prior to the Guidelines—the limitations the Guidelines place on a judge's discretion cannot violate a defendant's right to due process by reason of being vague. It therefore follows that the Guidelines cannot be unconstitutionally vague as applied to [the defendant] in this case. Even vague guidelines cabin discretion more than no guidelines at all. What a defendant may call arbitrary and capricious, the legislature may call discretionary, and the Constitution permits legislatures to lodge a considerable amount of discretion with judges in devising sentences.

*Wivell*, 893 F.2d at 160.

mission of the special interrogatory asking the jury to find an aggravating factor listed in the Minnesota Sentencing Guidelines—namely whether E.B. was "treated with particular cruelty"—"confuse[d] the role of jury and judge." He asserts that although the jurors in a *Blakely* jury trial "must decide any 'additional fact' of consequence to a judge's decision to upwardly depart[,] the judge still decides whether a fact found by the jury distinguishes the offense from the typical offense to such a degree that departure is warranted." [5]

■ In *Blakely*, the Court explained that any *fact* (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a guilty plea or guilty verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. *Blakely v. Washington*, 542 U.S. 296, 301, 303–04, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); *see also United States v. Booker*, 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). For most felony offenses,[6] the maximum sentence authorized by a guilty plea or guilty verdict is the top of the presumptive sentencing range provided in the Minnesota Sentencing Guidelines' grid because the guidelines expressly require a district court to pronounce a sentence within the range on the grid.[7] Minn. Sent. Guidelines II.D. But the guidelines allow a district court to exceed the maximum sentence authorized by the facts established by a

guilty plea or guilty verdict if "there exist identifiable, substantial, and compelling circumstances to support a sentence outside the range on the grids." *Id.*; *see also State v. Shattuck*, 704 N.W.2d 131, 140 (Minn.2005) (explaining that a "district court has discretion to depart *'only if* aggravating or mitigating circumstances are present.'" (quoting *State v. Best*, 449 N.W.2d 426, 427 (Minn.1989))). The phrase "there exist identifiable, substantial, and compelling circumstances to support a sentence outside the range on the grids," reflects two distinct requirements for an upward sentencing departure: (1) a factual finding that there exist one or more circumstances not reflected in the guilty verdict or guilty plea, and (2) an explanation by the district court as to why those circumstances create a substantial and compelling reason to impose a sentence outside the range on the grid. As discussed below, this interpretation is supported by the language of Minn. Sent. Guidelines II.D.

■ Consistent with *Blakely*, Minn. Sent. Guidelines II.D provides that a district court "must afford the accused an opportunity to have a jury trial on the *additional facts* that support the departure and to have the facts proved beyond a reasonable doubt." (Emphasis added.) If the State proves the additional facts "beyond a reasonable doubt, the [district court] may exercise [its] discretion to depart from the presumptive sentence." *Id.*

5. For purposes of this opinion, the term "additional facts" means those facts that were not reflected in the jury verdict or admitted by Rourke but that would support a substantial and compelling reason to depart from the presumptive guideline sentence.

6. First-degree murder is excluded from the guidelines by law. Minn. Sent. Guidelines V.

7. In response to *Blakely,* similar language in the federal sentencing guidelines was judicial-

ly excised. *See United States v. Booker*, 543 U.S. 220, 245, 249–50, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (holding that the federal sentencing guidelines were discretionary). We rejected that line of reasoning as applied to the Minnesota Sentencing Guidelines. *See, e.g., State v. Allen*, 706 N.W.2d 40, 45–46 (Minn.2005); *State v. Barker*, 705 N.W.2d 768, 771–72 (Minn.2005); *State v. Shattuck*, 704 N.W.2d 131, 144 (Minn.2005).

In exercising that discretion, however, the district court "must disclose in writing or on the record the particular substantial and compelling circumstances that make the departure more appropriate than the presumptive sentence." *Id.* In other words, the district court must explain why the circumstances or additional facts found by the jurors in a *Blakely* trial provide the district court a substantial and compelling reason to impose a sentence outside the range on the grid. These explanations do not involve finding facts, nor is it a role that has traditionally belonged to the jury. Consequently, these discretionary acts by the district court are not subject to the rule announced in *Blakely.*

The question presented in this case is whether the aggravating factor of particular cruelty listed in Minn. Sent. Guidelines II.D is an "additional fact" which must be submitted to the jurors in a *Blakely* trial or a "reason" which explains why the additional facts provide the district court a substantial and compelling reason or basis to impose a sentence outside the range on the grid, and which are outside the purview of a *Blakely* jury.

The Minnesota Sentencing Guidelines describe the aggravating factors listed in Minn. Sent. Guidelines II.D as an advisory and "nonexclusive list of factors which may be used as *reasons* for departure." *Id.* (emphasis added). The factors include that "[t]he victim was treated with particular cruelty for which the individual offender should be held responsible." *Id.* Although not controlling, the sentencing guidelines' comments explain that "[t]he Commission provided a non-exclusive list of reasons which may be used as reasons for departure" when it identified aggravating and mitigating factors. Minn. Sent. Guidelines cmt. II.D.201. The comments further explain that the "factors are in-

tended to describe specific situations involving a small number of cases." *Id.*

Based on the language of Minn. Sent. Guidelines II.D, we conclude that the particular cruelty aggravating factor is a reason that explains why the additional facts found by the jury provide the district court a substantial and compelling basis for imposition of a sentence outside the range on the grid. This conclusion is consistent with our past descriptions of aggravating factors as *reasons* explaining why the *facts* of the case provide the district court a substantial and compelling basis to impose a sentence outside the range on the grid. For example in *State v. Schantzen,* 308 N.W.2d 484, 485–87 (Minn.1981), we explained that the fact that the defendant sprayed the handcuffed victims with chemicals supported the district court's stated reason (particular cruelty) for imposing a sentence outside the range on the grid. It also is consistent with the nondeferential manner we use to review the aggravating factors on which a district court relied in imposing a sentence outside the presumptive range on the sentencing guideline grid. *See State v. Leja,* 684 N.W.2d 442, 450 (Minn.2004) (plurality opinion) (explaining that although the facts of the case were reprehensible, they did not provide a substantial and compelling reason to depart, including particular cruelty); *Holmes v. State,* 437 N.W.2d 58, 59 (Minn.1989) (explaining that in "the final analysis, our decision whether a particular durational departure by a trial judge was justified 'must be based on our collective, collegial experience in reviewing a large number of criminal appeals from all the judicial districts'" (quoting *State v. Norton,* 328 N.W.2d 142, 146–47 (Minn.1982))).

■■ Although the rule announced in *Blakely* now requires that the facts of the case be found by a jury, it does not require us to abandon our view that the particular

cruelty aggravating factor is a reason explaining why the *facts* of the case provide the district court a substantial and compelling basis for imposition of a sentence outside the range on the grid.[8] We hold that a district court must submit to a jury the question of whether the State has proven beyond a reasonable doubt the existence of additional facts, which were neither admitted by the defendant, nor necessary to prove the elements of the offense, but which support reasons for departure. But the question of whether those additional facts provide the district court a reason to depart does not involve a factual determination and, therefore, need not be submitted to a jury.[9]

8. The dissent opines that the definition of particular cruelty we have developed through our case law has two components: gratuity and typicality. The dissent explains that "gratuity" involves a determination of whether the defendant inflicted gratuitous physical, psychological, or emotional pain that goes beyond what is inherent in the statutory elements of the crime. The dissent further explains that "typicality" involves a determination of whether the defendant's conduct was more serious than that typically involved in the commission of the crime. We agree that in our pre-*Blakely* cases, we considered the concepts of gratuity and typicality as part of our discussion of the particular-cruelty aggravating factor. But in those cases the distinction between the facts found and the reasons given for the departure was of little import because the district court served as both factfinder and sentencer. We now clarify that the aggravating factor of "particular cruelty" is a reason for departing and not an additional fact to be found.

To be clear, the question of whether the defendant inflicted the physical, psychological, or emotional pain alleged by the State is one for the jury. But the explanation as to why the facts found by the jury made the defendant's offense more serious than that typically involved in the commission of the crime—the victim was treated with particular cruelty for which the individual offender should be held responsible—is given by the court.

The dissent's discussion of gratuity and typicality is not appreciably different then our analysis, except that the dissent concludes that typicality is a question for the jury. But even the comment to the Washington Pattern Jury Instruction—on which the dissent relies—questions whether typicality can or should be submitted to the jury. *See* 11A Wash. Sup.Ct. Comm. on Jury Instructions, *Wash. Practice, Pattern Jury Instructions,*

Crim. WPIC 300.10 (3d ed. 2008) (stating that "[j]uries are not in a good position to make [typicality decisions]-they have information only about the current offense. For this reason, judges have traditionally decided these types of issues.... It is not even clear how such evidence would be presented to the jury, other than through expert testimony."). *See also Kevin S. Burke, State v. Dettman: The End of the Sentencing Revolution or Just the Beginning?,* 33 Wm. Mitchell L.Rev. 1331, 1343 (2007) (discussing the difficulties in asking *Blakely* juries to resolve the question of particular cruelty because it "require[s] context").

9. This conclusion is not inconsistent with our decision in *State v. Jackson,* 749 N.W.2d 353 (Minn.2008), or *State v. Shattuck,* 704 N.W.2d 131 (Minn.2005), because those cases did not squarely address the issue in this case. In *Jackson,* both the majority and the dissent noted that at the *Blakely* trial, the district court had not asked the jurors whether Jackson committed the offense with particular cruelty. 749 N.W.2d at 360 n. 3 (majority opinion), 363 n. 3 (Gildea, J., dissenting). But that discussion did not squarely or fully address the issue presented here. Instead, it focused on whether the severity of the victim's injuries could be used to support the district court's upward sentencing departure. In *Shattuck,* the court did not need to address the issue of whether the aggravating factors listed in Minn. Sent. Guidelines II.D were facts to be found by the jury or were recognized reasons why an upward departure may be more appropriate than the presumptive sentence based on the facts found because in either event the district court had improperly acted as a fact-finder. 704 N.W.2d at 142.

Citing Minn. Sent. Guidelines cmt. II.D.01, the dissent argues that aggravating factors should be submitted to a jury. *See* Minn. Sent. Guidelines cmt. II.D.01 (stating that

Because we have concluded that *Blakely* does not require a district court to submit the aggravating factor of particular cruelty to a jury, Rourke's effort to distinguish *Givens* and *Wivell* fails.[10] Rourke argues that a jury cannot be expected to determine when a crime is particularly cruel, as most jurors have little to no experience with violent crimes. But *Blakely* does not require that a jury determine whether a crime was particularly cruel. Rather, *Blakely* requires that the jury determine "additional facts" (i.e., the defendant sprayed the handcuffed victims with chemicals) which a judge may rely on to support his or her explanation as to why those additional facts support a substantial and compelling reason (i.e., the defendant's particular cruelty made the offense more serious than that typically involved in the commission of the crime) to impose a sentence outside the presumptive sentencing range. Because the aggravating factor of particular cruelty, as defined by Minn. Sent. Guidelines II.D.2, is not submitted to the jury, the reasoning in the pre-*Blakely* cases is still applicable.

Before *Blakely*, we repeatedly applied the "particular cruelty" factor, relying on our collective experience. *See, e.g., State v. Griller*, 583 N.W.2d 736, 744 (Minn. 1998). We have explained that "particular cruelty" involves the gratuitous infliction of pain and cruelty " 'of a kind not usually associated with the commission of the offense in question.' " *State v. Norton*, 328 N.W.2d 142, 146 (Minn.1982) (quoting *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn.1981)); *see also State v. Smith*, 541 N.W.2d 584, 590 (Minn.1996) (noting that "particular cruelty" involves gratuitous infliction of pain). These standards protect against arbitrary enforcement of the sentencing guidelines.

 Based on *Givens* and *Wivell*, we reaffirm that the void-for-vagueness doctrine does not apply to the aggravating factor of particular cruelty. Our decision today is consistent with other courts that have affirmed that, even after *Blakely* and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), vagueness challenges do not apply to sentencing guidelines. *E.g., United States v. Idowu*, 520 F.3d 790, 795–96 (7th Cir.2008) (holding that vagueness challenges do not apply to sentencing guidelines but, even if they did, the challenged guideline was not unconstitutionally vague). We therefore affirm the court of appeals' decision that the aggravating sentencing factor of "particular cruelty" is not unconstitutionally vague. We reverse, however, its order to submit the factor to the jury with a definition of

---

"[a] defendant has the right to a jury trial to determine whether or not aggravating factors are proved beyond a reasonable doubt"). We acknowledge that this comment is inconsistent with our holding. But the comment is not controlling authority on this issue. *Asfaha v. State*, 665 N.W.2d 523, 526 (Minn. 2003) (explaining that comments to the Minnesota Sentencing Guidelines are advisory rather than controlling). The dissent also relies on the pattern jury instructions. But the pattern jury instructions are not persuasive authority because they reflect our arguably imprecise use of the phrase "aggravating factor" in past cases where the issue of whether an aggravating factor should be submitted to the jury was not squarely before us.

10. The dissent claims that our reliance on *Givens* is misplaced. The dissent concedes, however, that *Givens* controls *judicial* sentencing decisions. Because we conclude that the aggravating sentencing factor of particular cruelty is a reason, explaining the judicial determination that the "additional facts" found by the jury make departure more appropriate than the presumptive sentence, our reliance on *Givens* is not misplaced. Despite the dissent's claim to the contrary, we need not, and do not, reach the issue of whether *Givens* precludes a vagueness challenge to the facts that must be found by a jury (which we describe as "additional facts" and which the dissent erroneously asserts include "aggravating sentencing factors").

"particular cruelty." Instead, if another *Blakely* trial is held on remand, the district court should submit to the *Blakely* jury one or more special interrogatories that ask whether the State has proven, beyond a reasonable doubt, a factual circumstance which the State alleges would provide the district court a substantial and compelling reason (i.e., particular cruelty) to depart from the presumptive guideline sentence.

## II.

We turn to the question of whether the court of appeals erred when it allowed the State to appeal the district court's decision not to submit the abuse-of-power question to the *Blakely* jurors. Rourke claims the court of appeals failed to strictly construe the State's right to appeal under Minn. R.Crim. P. 28.04. We agree.

■■■ The ability of the State to appeal is limited. *See In re C.W.S.*, 267 N.W.2d 496, 498 (Minn.1978). There must be a statute or court rule that permits the appeal, or the issue must "arise by necessary implication" from an issue where the State's right to appeal is expressly provided. *Id.* We strictly construe the rules governing appeals by the State in criminal cases because such appeals are not favored. *State v. Barrett*, 694 N.W.2d 783, 785–87 (Minn.2005).

■■■ Minnesota Rule of Criminal Procedure 28.04, subdivision 1(2), permits the State in a felony case to appeal from "any sentence imposed or stayed by the trial court." The court of appeals concluded that this right includes the ability to challenge the district court's decision on which questions to submit to the *Blakely* jury. *Rourke III*, 2008 WL 2105445, at *6. The de novo standard controls our review of the court of appeals' decision because the issue presented involves an interpretation

of procedural rules. *Barrett*, 694 N.W.2d at 785.

■■■ Our post-*Blakely* amendments to the Minnesota Rules of Criminal Procedure are not controlling in this case because the amendments became effective after Rourke's sentencing. Nevertheless, the amended rules inform our analysis of the proper appeal avenue for the State when it seeks review of a district court's decision not to submit a particular question to the *Blakely* jurors. Under the amended rules, the State must notify the defense of anticipated upward-departure grounds before trial, and the applicability of the noticed grounds is an issue the district court is to resolve at the omnibus stage of the case. *See* Minn. R.Crim. P. 7.03 (requiring notice); Minn. R.Crim. P. 11.04 (requiring the district court at the omnibus hearing "to determine whether the law and proffered evidence support an aggravated sentence"). Pursuant to the procedures set forth in Minn. R.Crim. P. 28.04, subd. 2, the State may file a pretrial appeal challenging the district court's omnibus rulings. This pretrial-appeal right is limited, in part, because the State cannot file a pretrial appeal after jeopardy has attached. Minn. R.Crim. P. 28.04, subd. 2(8). In sum, our post-*Blakely* amendments to the rules of criminal procedure create a pretrial process for State challenges to a district court's decision not to submit a particular question to the *Blakely* jurors. With this process in mind, we consider whether at the time of Rourke's sentencing, the State's right to appeal from a sentence imposed or stayed necessarily implied an ability to challenge a district court's pretrial decision not to submit a particular question to the *Blakely* jurors.

A district court imposes or stays a sentence at a sentencing hearing, which is a proceeding governed by Minn. R.Crim. P.

27.03. On appeal from a felony sentence imposed or stayed, we "determine whether the sentence is inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the sentencing court." Minn. R.Crim. P. 28.05, subd. 2. When strictly construed, this language does not necessarily imply a right to challenge a district court's pretrial decision not to submit a particular question to the jurors in a *Blakely* trial. We therefore reverse the court of appeals' decision to allow the State to file a post-trial appeal challenging the district court's decision not to submit the abuse-of-power question to the *Blakely* jurors. We need not, and do not, consider the merits of the State's claims regarding the abuse-of-power question.

### III.

Although the State originally sought review of the court of appeals' decision that to retry Rourke on particular vulnerability would be in violation of the double jeopardy bar, the State now concedes that the court of appeals correctly analyzed this issue and the State should not be permitted to submit particular vulnerability to a jury if a new trial is granted. Thus, we need not, and do not reach this issue. We remand the case to the district court for further proceedings consistent with our opinion.

Affirmed in part, reversed in part, and remanded.

GILDEA, Justice (concurring).

I agree with the majority that the "particular cruelty" aggravating factor in the Minnesota Sentencing Guidelines does not make the guidelines unconstitutionally vague. I write separately to explain why I reach this conclusion.

Rourke argues, and the district court held, that the provision in the guidelines allowing for departures based on the "particular cruelty" aggravating factor was unconstitutionally vague. Specifically, Rourke contends that the guidelines are unconstitutionally vague because there is no clear definition explaining when a crime is committed with particular cruelty. Instead of a clear definition of such conduct, Rourke argues *Blakely* juries are left to apply subjective and ever-changing definitions of this factor, and the resulting uncertainty makes this departure provision of the guidelines unconstitutionally vague.

We have already decided that the guidelines are not unconstitutionally vague. *State v. Givens*, 332 N.W.2d 187, 190 (Minn.1983). Rourke argues that *Givens* does not control because sentencing departures are "no longer [the] 'routine sentencing decision[s]' made by a judge." Rather, Rourke contends, these decisions now "require[ ] fact-finding by citizens at large." But, in briefs to this court, Rourke and the State agreed that the "particular cruelty" factor should not be submitted to a *Blakely* jury for a factual finding. The parties agreed, and the majority has now held, that the relative concept of "particular cruelty" is a conclusion to be reached by the sentencing judge and not a fact to be found by a *Blakely* jury. I agree. *See State v. Jackson*, 749 N.W.2d 353, 363 n. 3 (Minn.2008) (Gildea, J., dissenting). Because *Blakely* juries should not be asked to make comparative conclusions, such as whether a crime was committed with particular cruelty, there is no basis for Rourke's argument that *Givens* is not dispositive of the constitutional question. I would find that *Givens* controls, and on the same basis as we did in that case, uphold the constitutionality of the guidelines as against Rourke's void for vagueness challenge. *See Givens*, 332 N.W.2d at 190 ("The application of vagueness argument

to more routine sentencing decisions—those not including the death sentence—is not contemplated by the *Gregg* [*v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976),] and *Godfrey* [*v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980),] decisions. Defendant's claim of vagueness of the guidelines, either on their face or as applied, is misplaced in this context.").

ANDERSON, PAUL H., Justice (dissenting).

I respectfully dissent and do so for three reasons. First, the Minnesota Sentencing Guidelines response to *Blakely* and our case law recognize that aggravating factors, including particular cruelty, are facts that must be found by a jury. Second, a finding of particular cruelty exposes the defendant to a sentence exceeding the maximum authorized by the jury's verdict of guilty and therefore must be found by a jury. Third, I conclude that due-process vagueness concerns apply to sentencing factors. Therefore, I would remand to the district court for a new sentencing trial.

The post-*Blakely* changes in the sentencing guidelines and pattern jury instructions require that aggravating sentencing factors such as particular cruelty be submitted to a jury because they are facts. The guidelines now require a jury trial on the "additional facts that support the departure." Minn. Sent. Guidelines II.D. A jury must determine whether "aggravating factors" are proved beyond a reasonable doubt. Minn. Sent. Guidelines cmt. II.D.01. Additionally, the pattern jury instructions direct the jury to determine the existence of "(an)(any) aggravating factor(s)." 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal,* CRIMJIG 8.01 (5th ed. Supp. 2009).

Our post-*Blakely* case law shows that we understand that aggravating factors are factual in nature. *E.g., State v. Chauvin,* 723 N.W.2d 20, 24 (Minn.2006) (stating that impaneling a jury was "necessary . . . to vindicate [defendant's] Sixth Amendment right to a jury determination of aggravating sentencing factors"); *State v. Thompson,* 720 N.W.2d 820, 827 (Minn. 2006) (stating that after waiver of jury, the district court "engaged in judicial fact-finding and found several aggravating factors"); *State v. Allen,* 706 N.W.2d 40, 46 (Minn.2005) (stating that use of an offender-related factor or its similarity to traditional sentencing judgments did not insulate the departure from the *Apprendi/Blakely* rule).

In his dissent in *Thompson,* Justice Sam Hanson articulated the dynamics of a sentencing departure, explaining that there are two functions: the fact-finding function and the discretionary-departure function:

When we assumed that the district court could perform the fact finding function, we had no occasion to reflect on the additional discretion that the district court possesses to determine whether and precisely how to depart after finding that there were aggravating facts. Now that *Blakely* has clarified that the fact finding function must be done by the jury, unless waived by the defendant, the other function of the district court, to exercise discretion in determining whether and how to depart, comes into clearer focus.

In other words, even if a sentencing jury is used and it finds aggravating facts, the decisions to depart and by how much to depart are not automatic, but call upon the district court to exercise discretion, based on the court's broader experience in sentencing and ability to compare the facts of the current case, as found by the jury, with the facts of other similar cases. Of course, the district court has no discretion to depart unless

the jury finds aggravating facts, but conversely the district court has discretion not to depart, or to decide precisely how much to depart, where the jury finds aggravating facts.

720 N.W.2d at 832 (Hanson, J., dissenting).

*Thompson* involved the "major economic offense" aggravating factor, a factor which must be supported by a minimum of two other qualified aggravating factors. Minn. Sent. Guidelines II.D.2.b(4). After the defendant waived a sentencing jury, the district court found that the defendant had committed a major economic offense. Justice Hanson clarified that "the finding of a major economic offense, whether made by the court or a jury, does not end the matter, and the district court must then exercise discretion to decide whether to depart and, if so, by how much." *Thompson*, 720 N.W.2d at 833 (Hanson, J., dissenting).

Fundamentally, aggravating factors are facts. The United States Supreme Court has said that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The statutory maximum "is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (emphasis omitted). The majority's characterization of an aggravating factor as a "reason" cannot exempt an upward sentencing departure from being subject to the constitutional protections articulated in *Blakely. See id.* at 299–300, 304–05, 124 S.Ct. 2531 (invalidating Blakely's sentence which was based

on the judge's finding of deliberate cruelty).

A second point of my disagreement with the majority is my conclusion that the particular cruelty factor must be submitted to a jury. We have held that gratuitous infliction of physical pain qualifies as "particular cruelty." *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn.1981). Upward sentencing departures have also been justified by gratuitous infliction of emotional pain such as by threats, *State v. Norton*, 328 N.W.2d 142, 146–47 (Minn.1982), or degradation of the victim, *State v. Cox*, 343 N.W.2d 641, 645 (Minn.1984). We have said that if there is an upward departure, the defendant's conduct must be significantly more serious " 'than that typically involved in the commission of the crime in question.' " *State v. Leja*, 684 N.W.2d 442, 450 (Minn.2004) (plurality opinion) (quoting *Cox*, 343 N.W.2d at 643). Further, facts already taken into account by the legislature in determining the degree or seriousness of the crime in question are inappropriate bases for an upward departure. *E.g., Taylor v. State*, 670 N.W.2d 584, 589 (Minn.2003).

In summary, by our case law we have defined particular cruelty as the gratuitous infliction of physical, psychological, or emotional pain, which goes beyond what is inherent in the statutory elements of the crime at issue and is significantly more serious than that typically involved in the commission of that crime. This definition consists of two basic components: gratuity and typicality. Gratuity is fundamentally a factual issue that is well within the jury's fact-finding function; but typicality is more difficult to peg and appears to be a mixed issue of fact and law.

Typicality is the core issue in determining whether an upward departure is warranted. *State v. Thao*, 649 N.W.2d 414, 421 (Minn.2002) (stating that the "core is-

sue" for an upward departure "is whether the defendant's conduct was significantly more ... serious than that typically involved in the commission of the crime"). Typicality review necessarily requires (1) an examination of whether the conduct exceeded the elements of the offense and (2) a comparison and weighing of the defendant's conduct in committing the offense with conduct usually associated with the commission of that offense. *E.g., Holmes v. State,* 437 N.W.2d 58, 59–60 (Minn.1989) (holding that upward departure was unjustified where defendant's conduct in committing intentional murder "was not significantly different from that typically involved in the commission of that crime").

We addressed an analogous situation in *State v. Henderson,* a case involving the career-offender factor, a crime which requires a determination of whether the offender committed the current felony "as part of a 'pattern of criminal conduct.'" 706 N.W.2d 758, 760 (Minn.2005) (quoting Minn.Stat. § 609.1095, subd. 4 (2004)). The specific issue in *Henderson* was whether a pattern of criminal conduct presented a question of law or required a finding by a jury. Prior case law had defined the standard to require that the current and prior crimes be similar in "motive, purpose, results, participants, victims or other shared characteristics." *Id.* at 761 (citation omitted) (internal quotation marks omitted). We concluded that such a finding "involves a comparison of different criminal acts, weighing the degree to which those acts are sufficiently similar." *Id.* at 762 (citation omitted) (internal quotation marks omitted). Based on this conclusion, we held that additional findings made by the sentencing judge violated *Blakely. Id.* Similar to the career-offender factor, I conclude that a finding of particular cruelty involves a comparison of defendant's conduct with conduct usually associated with the offense—weighing the degree of seriousness of the defendant's conduct—and therefore must be made by a jury.

In *United States v. Booker,* the Supreme Court said, "*Any* fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (emphasis added). It does not matter how the required finding is characterized. "[T]he relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi,* 530 U.S. at 494, 120 S.Ct. 2348. Because a finding of particular cruelty could increase a sentence beyond the maximum allowed based on facts in a plea or authorized by jury verdict, I conclude that particular cruelty must be proved to a jury. *See Cunningham v. California,* 549 U.S. 270, 283, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007) (discussing *Blakely,* the Court stated that "[t]he judge could not have sentenced Blakely above the standard range without finding the additional fact of deliberate cruelty. Consequently, that fact was subject to the Sixth Amendment jury-trial guarantee.").

An obvious concern is that jurors lack the experience of a judge, who can use similar cases for comparison, and that this lack of expertise by the jury will undermine the sentencing guidelines goal of uniformity and proportionality. But "juror performance in sentencing fact-finding might well be improved by providing jurors a set of sample circumstances to which they can compare a given case." J.J. Prescott & Sonja Starr, *Improving Criminal Jury Decision Making After the*

Blakely *Revolution,* 2006 U. Ill. L.Rev. 301, 328. Prescott and Starr suggest the use of fictional examples, loosely based on real cases, of the same offense committed in different ways. *Id.* at 329 nn. 144 & 145. They also suggest that the examples be chosen by the sentencing commission and standardized to alleviate concern over manipulation that could bias a jury. *Id.* at 329 n. 145. This approach, however, might prove daunting or even in some respects inconsistent with Minnesota's conviction-offense system and departure criteria. *See* Richard S. Frase, Blakely *in Minnesota, Two Years Out: Guidelines Sentencing Is Alive and Well,* 4 Ohio St. J.Crim. L. 73, 74 (2006) (explaining the design of the guidelines). Consequently, I would commend the development of appropriate departure criteria for particular cruelty to the guidelines commission.

Finally, I disagree with the majority's conclusion that the vagueness doctrine has no application to sentencing factors that must be found by a jury. "A statute can be impermissibly vague ... if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado,* 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). Impermissibly vague laws violate the Due Process Clause of the Fifth Amendment for federal law or the Fourteenth Amendment for state law.[1] The vagueness doctrine is not limited to statutes defining elements of substantive crimes. "So too, vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." *United States v. Batchelder,* 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); *see also James v. United States,* 550 U.S. 192, 230–31, 127 S.Ct.

1586, 167 L.Ed.2d 532 (2007) (Scalia, J., dissenting, joined by Stevens and Ginsburg, JJ.) (concluding that sentencing enhancement factor in Armed Career Criminal Act was unconstitutionally vague).

The majority's reliance on *State v. Givens,* 332 N.W.2d 187 (1983), to preclude vagueness challenges to aggravating sentencing factors that must be found by a jury is misplaced. In *Givens,* defendant's counsel submitted a 122–page brief raising numerous pretrial, trial, and sentencing issues, including whether "the standards for departure from the guidelines are so vague and overbroad as to be unconstitutional both on their face and as applied." 332 N.W.2d at 189. In support of those claims, defendant's counsel relied on *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), and *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Both *Godfrey* and *Gregg* are Eighth Amendment death penalty cases. A review of the *Givens* briefs indicates that neither party raised or briefed whether the vagueness doctrine applied to sentencing factors in the first instance. We held that the sentencing guidelines were not unconstitutionally vague, explaining that "application of vagueness argument to more routine sentencing decisions—those not including the death sentence—is not contemplated by the *Gregg* and *Godfrey* decisions. Defendant's claim of vagueness of the guidelines, either on their face or as applied, is misplaced in this context." *Givens,* 332 N.W.2d at 190. As I read *Givens,* application of the due-process vagueness doctrine to either "more routine" sentencing decisions or pre-*Blakely*-era judicial sentencing decisions are both open questions of law in Minnesota.

---

1. *See United States v. Powell,* 423 U.S. 87, 89–90, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975) (Fifth Amendment); *Kolender v. Lawson,* 461 U.S. 352, 353–54, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (Fourteenth Amendment).

I doubt that there can be any dispute that the particular cruelty factor is vague. "It is not enough to instruct the jury in the bare terms of an aggravating circumstance that is unconstitutionally vague on its face." *Walton v. Arizona,* 497 U.S. 639, 653, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), *overruled on other grounds by Ring v. Arizona,* 536 U.S. 584, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Nevertheless, an aggravating factor that is vague may be applied if state courts have adopted an acceptable limiting definition. *Id.* at 654–55, 110 S.Ct. 3047.

In the wake of *Blakely,* other states with cruelty sentencing factors have drafted pattern jury instructions derived from judicial definitions. *E.g.,* 11A Wash. Sup.Ct. Comm. on Jury Instructions, *Wash. Practice, Pattern Jury Instructions,* Crim. WPIC 300.10 (3d ed. 2008) (" 'Deliberate cruelty' means gratuitous violence or other conduct which inflicts physical, psychological, or emotional pain as an end in itself, and which goes beyond what is inherent in the elements of the crime [or is normally associated with the commission of the

crime."]); Alaska Sup.Ct. Comm. on Jury Instructions, *Alaska Pattern Jury Instructions,* Crim. 1.56E (" 'Deliberate cruelty' means conduct that involves gratuitously inflicted torture or violence. Deliberate cruelty does not include conduct that is merely a direct means to accomplish the crime. Deliberate cruelty occurs when pain—whether physical, psychological, or emotional—is inflicted 'gratuitously' or as an end in itself."). Given that our prior case law has defined particular cruelty, I would remand this matter to the district court with the directive that particular cruelty be defined for the jury in a jury instruction and then submitted to the jury unless Rourke, on the record, waives submission to the jury or stipulates to some other process.[2]

---

**2.** The Minnesota Rules of Criminal Procedure provide waiver options for enhancement facts. Minn. R.Crim. P. 26.01, subds. 1(2)(b), 3.