*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0830**

State of Minnesota,
Respondent,

vs.

Bjorn Bolton Iverson,
Appellant.

**Filed June 17, 2024**
**Affirmed in part, reversed in part, and remanded**
**Slieter, Judge**

Hennepin County District Court
File No. 27-CR-21-20374

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Mark V. Griffin, Senior Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Smith, Tracy M., Judge; and Slieter, Judge.

**NONPRECEDENTIAL OPINION**

**SLIETER**, Judge

In this appeal from the final judgment of conviction for possession of pornographic works, appellant argues that the district court erred by allowing the state to introduce evidence discovered during an additional search of appellant's computer hard drive nearly

two years after it was first seized and searched by police. Alternatively, appellant challenges his sentences, arguing that the district court abused its discretion by imposing upward durational departures. Because the district court acted within its discretion by allowing the state to introduce evidence found on appellant's hard drive, we affirm in part. But, because the district court failed to explain why creating the pornographic works provided a substantial and compelling reason to depart from the presumptive sentence for their possession, we reverse in part and remand for resentencing.

**FACTS**

In 2019, law enforcement seized a computer hard drive belonging to appellant Bjorn Bolton Iverson pursuant to a search warrant. The hard drive contained child pornography. Iverson subsequently pleaded guilty to several counts of possessing child pornography.[1] Law enforcement retained possession of the hard drive.

In 2021, M.K. contacted the Plymouth Police Department and reported that Iverson had sex with her in 2017, when she was 15 years old. M.K. also reported that Iverson recorded having sex with her after she turned 16 years old. After taking M.K.'s statement, law enforcement searched Iverson's hard drive again and found at least six videos of Iverson engaging in various sex acts with M.K. Respondent State of Minnesota charged Iverson with criminal sexual conduct in violation of Minn. Stat. § 609.344, subd. 1(b) (2016), and two counts of possessing child pornography in violation of Minn. Stat. § 617.247, subd. 4(a) (Supp. 2019). The state also noticed their intent to seek aggravated

---

[1] This court affirmed Iverson's sentences in 2022. *State v. Iverson*, No. A21-1341, 2022 WL 4074789 (Minn. App. Sept. 6, 2022) (*Iverson I*), *rev. denied* (Minn. Nov. 23, 2022).

sentences on the possession of child pornography counts based on the fact that Iverson had created the pornographic works he was charged with possessing. The case proceeded to a jury trial in 2022.

At the start of trial, Iverson moved *in limine* to prevent the state from introducing evidence from the hard drive because law enforcement did not obtain a new warrant to search it a second time. Iverson did not, on the record or in writing, support the motion with any legal authority. The district court denied the motion, stating that it was unaware of any authority supporting Iverson's request particularly because the hard drive remained in law enforcement custody following an earlier warranted search of its contents.

Iverson waived his right to have a jury decide whether the state proved the aggravating factor it claimed supports departure and to, instead, have the court make that determination. The jury found Iverson guilty as charged. On the count of criminal sexual conduct, the district court sentenced Iverson to 144 months' imprisonment. For the two counts of possessing child pornography, the district court sentenced Iverson to consecutive 30-month prison terms, which reflects an upward durational departure from the presumptive guidelines sentence of 15-month prison terms.

Iverson appeals.

## DECISION

I.    **The district court acted within its discretion by allowing the state to introduce evidence found on the hard drive.**

Iverson argues that the district court erred by allowing the state to introduce evidence found on the hard drive, claiming that law enforcement needed a new warrant to

3

search it a second time. As an initial matter, Iverson frames this issue as if this court were reviewing a pretrial motion to suppress. But Iverson made no motion to suppress the evidence found on the hard drive; rather, the issue was raised on the first day of trial *in limine* as an evidentiary issue.

"Evidentiary rulings rest within the sound discretion of the district court, and we will not reverse an evidentiary ruling absent a clear abuse of discretion." *State v. Ali*, 855 N.W.2d 235, 249 (Minn. 2014). We, therefore, consider whether the district court abused its discretion by allowing the state to present the evidence obtained from the hard drive.

Iverson's *in limine* motion asked "[f]or an order precluding the State from introducing the videos, displaying the alleged copulation before the jury," and argued that "[t]he police officer view[ed] this video in contravention of a search warrant and Mr. Iverson's constitutional right to privacy." The district court denied the request, reasoning:

> [O]nce you have some type of property, like it's a car, you can search the car, for instance. If you're looking for a gun because that's the basis for the search warrant and you find drugs, that's legitimately recovered evidence that can be used. I see this as relatively similar to that.

The district court also noted that it was not aware of any law requiring law enforcement to obtain a second warrant before searching items lawfully in its custody. Iverson did not provide the district court with any legal authority supporting his request. Because Iverson failed to support the motion with any legal authority, the district court acted within its discretion by allowing the state to introduce the evidence obtained from the hard drive.

On appeal, Iverson argues that the second search of the hard drive violated his Fourth Amendment right against warrantless searches. This court reviewed a substantially

similar claim in *State v. Johnson*. 831 N.W.2d 917, 922-25 (Minn. App. 2013), *rev. denied* (Minn. Sept. 17, 2013). As in this case, *Johnson* involved a subsequent forensic examination of a hard drive that had been previously seized and searched pursuant to a valid warrant. *Id.* And, as with this case, both forensic examinations in *Johnson* sought evidence of child pornography. *Id.* In *Johnson*, this court considered "whether appellant retained a reasonable expectation of privacy in the contents of a hard drive after the drive and data were seized pursuant to a search warrant authorizing a seizure of that drive and search of its contents." *Id.* at 923. This court explained that a person's expectation of privacy in property is terminated when that property is seized pursuant to a warrant. *Id.* at 924. Because a person does not have an expectation of privacy in seized property, subsequent forensic analysis of the seized property does "not amount to a second 'search' within the meaning of the Fourth Amendment." *Id.* (citation omitted). Law enforcement's subsequent analysis of the hard drive, therefore, did not violate the Fourth Amendment.

Iverson asks this court to overrule *Johnson*. The U.S. Supreme Court case in which Iverson relies on involved an individual who retained a Fourth Amendment privacy interest in the searched device, whereas Iverson no longer had a privacy interest in a device which had been seized pursuant to a warrant and was in police custody. *Riley v. California*, 573 U.S. 373, 392-93 (2014). We, therefore, decline the request.

**II.      The district court erred by imposing an upward durational departure without providing an adequate reason to depart.**

"[A] sentencing court can exercise its discretion to depart from the guidelines *only if* aggravating or mitigating circumstances are present and those circumstances provide a

5

substantial and compelling reason not to impose a guidelines sentence." *State v. Soto*, 855 N.W.2d 303, 308 (Minn. 2014) (quotations and citations omitted). We review *de novo* "whether a particular reason for an upward departure is permissible. . . . Once we determine as a matter of law that the district court has identified proper grounds justifying a challenged departure, we review its decision *whether* to depart for an abuse of discretion." *Dillon v. State*, 781 N.W.2d 588, 595 (Minn. App. 2010) (quotation omitted), *rev. denied* (Minn. July 20, 2010).

Iverson challenges his aggravated sentences on two grounds. First, he claims that the district court erred by imposing aggravated sentences without first finding that the state had proved beyond a reasonable doubt the aggravating factor supporting departure. Second, Iverson challenges the reason for departure, claiming that the district court failed to provide a permissible justification for aggravating his sentences. We begin, and end, our analysis with Iverson's second claim.

A district court may exceed the maximum sentence authorized by the facts established by a guilty verdict if "there exist identifiable, substantial, and compelling circumstances to support a departure." Minn. Sent'g Guidelines 2.D.1 (2019). Thus, there are two requirements for imposing an upward durational departure: "(1) a factual finding that there exist one or more circumstances not reflected in the guilty verdict or guilty plea, and (2) an explanation by the district court as to why those circumstances create a substantial and compelling reason to impose a sentence outside the range on the grid." *State v. Rourke*, 773 N.W.2d 913, 919 (Minn. 2009).

6

The state sought aggravated sentences for the possession of child pornography convictions, claiming that the offenses were more serious than the typical case because Iverson created the child pornography. While the district court did not explicitly find that Iverson had created the child pornography, it appears that it agreed that Iverson had done so, and Iverson does not contest that fact. The issue before us, rather, is whether the district court failed to explain why that fact justifies an aggravated departure.

The Minnesota Sentencing Guidelines provides a nonexclusive list of factors that may justify an upward departure. Minn. Sent'g Guidelines 2.D.3.b.1, 2 (2019) (providing that a departure may be appropriate if, for example, the victim was "particularly vulnerable" or if the offender "treated [the victim] with particular cruelty").

When explaining its decision to depart, the district court stated:

> The argument that was made in the last case that was affirmed by the court of appeals is that even though you're not charged with creating it, the fact that you created it should be a factor that can aggravate the sentence on both Counts 2 and 3, and I accept that argument, not necessarily for the exact reasons that [the previous district court] did.

In his first case, the district court, in granting an aggravated departure explained:

> Defendant's creation of the videos—his treating the victim as his sexual slave, unworthy of respect, calling her names, dehumanizing her—caused obvious physical pain and untold psychological harm to the child. These facts make his carrying around of the finished product even more abhorrent . . . Someone actually caused the harm—the pain and shame— visible in the videos defendant possessed, and that person was defendant himself.

*Iverson I*, 2022 WL 4074789, at *5. The district court determined that Iverson's conduct was equivalent to "gross and vile physical abuse" and "extraordinarily brutal conduct,"

7

which are proper grounds for departure. *Id.*; *see also Dillon*, 781 N.W.2d at 597-98

(outlining proper grounds for departure). In affirming the departures in *Iverson I*, this court

explained:

> Reasonable minds could perhaps disagree as to whether the
> acts described in the district court's above-quoted reasoning
> rose to the level of "gross and vile physical abuse" or
> "extraordinarily brutal" conduct. However, insofar as this
> court's de novo review is concerned, where this court must
> determine whether "the district court has identified proper
> grounds" as a matter of law, the district court's focus on the
> perceived violence and brutality of Iverson's actions identifies
> a proper legal ground for departure.

*Id.*

Here, the district court agreed with *Iverson I* that the fact that Iverson created the

videos justified departing but "not necessarily for the exact reasons." The district court

characterized the conduct portrayed as no "better or worse than most" child pornography.

Explaining its reason to depart, the district court explained:

> But what is – what makes me believe that there's solid basis
> for finding aggravating factors is that when you look at it from
> [M.K.'s] perspective, you know, it is a nightmare that is a
> reality every day to know that the worst moment of her life is
> captured on a video that can exist forever. 20, 30, 40 years
> from now, that is something that can haunt her. And I would
> tell that to the person that owns it on their phone or possesses
> it on their phone, but it's worse is the person that originated
> that, which was you. And I know you didn't mean to have
> something that could haunt [M.K.] for the rest of your life, but
> that's what you did. And it will, and for that I believe an
> aggravated sentence is justified on both counts.

"A durational departure must be based on factors that reflect the seriousness of the

offense." *State v. Solberg*, 882 N.W.2d 618, 623 (Minn. 2016) (emphasis omitted). Instead

8

of linking Iverson's conduct to the charged offense, the district court focused on the impact to M.K. In contrast to *Iverson I*, here the district court did not identify why Iverson's creation of the child pornography made his possession of it more serious than the typical child-pornography-possession offense. Therefore, the district court erred by imposing an upward durational departure without providing an adequate reason to depart. *Rourke*, 773 N.W.2d at 919.

"If reasons supporting the departure are stated, [appellate] court[s] will examine the record to determine if the reasons given justify the departure." *State v. Williams*, 361 N.W.2d 840, 844 (Minn. 1985). M.K. testified that, despite being uncomfortable with being recorded, she knew Iverson recorded their sexual encounters. M.K. also testified that after Iverson recorded the interactions, she asked Iverson if he still had the videos, suggesting that she did not know whether the videos continued to exist. The record here does not show that Iverson's creation of child pornography made his possession of it more serious than the typical offense. We, therefore, reverse Iverson's child pornography sentences and remand for resentencing and imposition of the presumptive guidelines sentence. *Id.* ("If the reasons given are improper or inadequate and there is insufficient evidence of record to justify the departure, the departure will be reversed.").[2]

**Affirmed in part, reversed in part, and remanded.**

---

[2] Because we reverse Iverson's sentences, we decline to address Iverson's claim that the district court failed to find that he created the pornographic works.