**Richard Donald CARSE, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. A09–985.**

Court of Appeals of Minnesota.

Feb. 9, 2010.

---

Marie L. Wolf, Interim Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, MN, for respondent.

Considered and decided by LARKIN, Presiding Judge; MINGE, Judge; and SCHELLHAS, Judge.

## OPINION

LARKIN, Judge.

Following his conviction of first-degree assault and the district court's imposition of an aggravated sentence, appellant petitioned for postconviction relief, claiming that the district court erred by accepting his waiver of the right to be present at trial and that there was an insufficient factual basis to support his aggravated sentence. The district court denied appellant's petition, and this appeal followed. Because the district court did not err by accepting appellant's express waiver of his right to be present at trial, we affirm appellant's conviction. But because the procedure utilized at appellant's sentencing trial produced findings that are insufficient to support his aggravated sentence, we reverse his sentence and remand.

## FACTS

On April 14, 2006, appellant Richard Donald Carse was charged with assault in the first degree. On May 8, Carse appeared in court with his court-appointed attorney. The district court made a finding of probable cause and entered a not guilty plea on Carse's behalf. On June 21, Carse again appeared with his court-appointed attorney but informed the court that he had retained private counsel. However, Carse refused to disclose the name of this attorney. At a hearing on June 28, Carse again declined to identify his private attorney but assured the district court that this attorney would be present to represent him at trial.[1] Carse's attorney informed the district court that he had concerns regarding Carse's competency. The district court ordered a competency evaluation, which indicated that Carse was competent to assist in his own defense and to understand the proceedings. At a hearing on August 31, the prosecutor requested a continuance to accommodate DNA analysis of evidence in the case. The district court granted the request and scheduled the case for trial on December 11.

On the morning of December 11, Carse appeared in court with his court-appointed attorney and asked the judge whether there was a procedure whereby the prosecutor would show him all of the evidence that would be offered against him at trial. The district court advised Carse that he had a right to know what the evidence was and that this information had been provided to his attorney. Carse's attorney offered to meet with Carse to review the evidence before the proceedings resumed that afternoon. Later that afternoon, Carse's attorney informed the district court that he had attempted to meet with Carse to review the evidence, but Carse declined to meet with him.

The district court held an evidentiary hearing on Carse's motion to suppress his

---

1. No private attorney ever appeared on Carse's behalf. Carse's court-appointed attorney continued to represent Carse throughout the proceedings.

statement to the police and on the state's motion to admit Carse's prior conviction for impeachment purposes. At the conclusion of the hearing, Carse informed the district court that he wanted a jury trial. The judge informed Carse that jury selection would begin at 9:00 a.m. the following morning.

When Carse appeared for trial on December 12, he stated that he wanted a hearing at which he could review the evidence against him before jury selection began. The district court reminded Carse that his pretrial evidentiary hearing had occurred the day before and that he had requested a jury trial. The district court explained that it was prepared to start the trial at that time. Carse stated that he was not going to have a trial. The court responded:

> [H]ere is the situation: We have got the prospective jurors standing out in the hallway, we are prepared to start the jury trial, and we are going to conduct the jury trial one way or the other. I'm hoping that you are going to cooperate and participate in the jury trial, which is your right, but we are going to do the jury trial in any event.

Carse responded: "Well, you can do it, but you are going to do it without me," and "I'm not going to be here. I don't want to be here while you are doing it." The court informed Carse that he had to be present in the courtroom during his trial.

After listening to additional statements regarding Carse's desire to know the evidence against him and his intent to file a federal lawsuit, the district court again informed Carse that it was prepared to begin the trial. Carse told the court that the trial would "progress without [him]." The district court informed Carse that he must be present at trial and that it did not want to have to use restraints to secure his presence. The district court offered Carse some time to talk with his attorney and to think about the matter. Carse declined the offer. The court asked Carse if it should bring the jury into the courtroom. Carse responded, "You can do it without me." The district court asked Carse if he would sit in the courtroom as jury selection began. Carse said that he would not. Then, in an apparent attempt to pacify Carse, the district court described the evidence that would be presented at trial. After which, the district court ordered a two-hour recess to accommodate Carse's request to review his recorded statement to the police.

Following the recess, Carse's attorney informed the district court that Carse had reviewed his statement. The district court asked Carse if he was ready to begin the trial. The district court also indicated that it had researched the issue and determined that Carse could in fact waive his right to attend the trial. The following exchange took place:

> THE COURT: That would be a right that you would have to give up voluntarily, because you have a right to be here for any proceedings in the courtroom and especially for the trial. If you do elect to absent yourself from the trial, then I'll tell the jury that you have chose to waive your right to be here at the trial. I'll tell that to the prospective jurors as well. I'll also tell them that you may elect to be present at any time and I will have you brought back into the courtroom from time to time to see if you wish to be present for the further proceedings in the trial. So do you understand everything that I have said?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. Do you wish to be here for the trial or do you still wish to be absent for the trial?
>
> THE DEFENDANT: I wish to be absent.

THE COURT: And do you understand that you have a complete right to be here starting at this point and continuing throughout the trial?

THE DEFENDANT: I do.

THE COURT: Do you also understand that, if you give up that right, you can tell me through [your attorney] at any time that you wish to be present and I'll have you brought back up for the trial?

THE DEFENDANT: That won't happen.

THE COURT: Pardon me?

THE DEFENDANT: That won't happen.

THE COURT: Okay. But do you understand that right?

THE DEFENDANT: Yes, I do.

THE COURT: Okay. And do you also understand that I will tell the prospective jurors and the jury that you have elected to waive your right to be present at the trial?

THE DEFENDANT: Yes.

THE COURT: Are you sure that this is what you want to do?

THE DEFENDANT: I am absolutely 100 percent sure.

THE COURT: Do you want any more time to talk with [your attorney] about this?

THE DEFENDANT: None whatsoever.

THE COURT: I'm sorry, I couldn't hear you again.

THE DEFENDANT: None whatsoever.

THE COURT: And do you want more time to think about this yourself?

THE DEFENDANT: No, sir.

THE COURT: Are you telling me you want to waive your right to be present at the trial?

THE DEFENDANT: I do, sir.

Carse returned to the jail, and a panel of prospective jurors was brought into the courtroom for voir dire.[2]

At the end of the proceedings on December 12, the district court informed counsel that it would have Carse brought to the courtroom before jury selection resumed the next day to ask Carse whether he wished to rescind or continue his waiver of the right to be present at trial. The next morning, the court and counsel learned that Carse had collapsed on the way from the jail to the courthouse and was taken to the hospital. The district court continued voir dire in Carse's absence. When jury selection was complete, the district court recessed the trial before administering the oath to the jury to inquire regarding Carse's condition. During the recess, the district court learned that Carse was still at the hospital, but no other information was available. Because Carse had waived his right to be present the day before and had shown no inclination to rescind that waiver, the district court administered the jury's oath despite Carse's absence.

On December 14, Carse appeared in court with his attorney and, in response to questions from the court, stated that he did not wish to be present for trial and that he did not want to testify. The following morning, Carse appeared with his attorney and stated that he wished to continue to waive his presence at trial and did not want to be present for closing argu-

---

**2.** Because the original venire that had been waiting outside of the courtroom had observed deputies remove Carse from the courtroom in handcuffs that morning, the attorneys were concerned that the prospective jurors might draw negative conclusions regarding Carse's behavior and his absence from trial. Therefore, the original venire was replaced with a new panel.

ments. When the jury sent a question to the district court during its deliberations, Carse appeared with his attorney and informed the district court that he continued to waive his right to be present and did not wish to be present when the court responded to the jury's question.

After the jury reached a verdict, Carse appeared in court with his attorney. The district court asked Carse if he wanted to remain in the courtroom for receipt of the verdict. Carse agreed to remain for the verdict. The district court informed Carse that if the jury came back with a guilty verdict, there would be a second phase of the trial regarding the state's motion for an upward sentencing departure, with arguments from counsel and instructions to the jury. The district court asked Carse if he wished to be present for those proceedings. Carse stated that he wanted to "skip it all." The district court asked Carse if he still wanted to remain for the verdict; Carse declined to do so.

The jury found Carse guilty of first-degree assault. The case proceeded to a sentencing trial, and the district court instructed the jury as follows:

> Members of the jury: You shall now determine whether the following aggravating factors exist: One, [the victim] was particularly vulnerable due to reduced physical or mental capacity, which was known or should have been known to [Carse]. Two, [the victim] was treated with particular cruelty, for which [Carse] should be held responsible.

After the jury reached its special verdict, Carse appeared with his attorney. The district court asked Carse if he wished to be present for the reading of the special verdict. Carse said that he would continue to waive his right to be present. The jury found that (1) the victim was particularly vulnerable due to reduced physical or mental capacity, (2) Carse knew or should have

known that the victim was particularly vulnerable, and (3) the victim was treated with particular cruelty for which Carse should be held responsible.

Carse was present at his sentencing hearing. The district court imposed an executed prison sentence of 120 months, an upward durational departure from the presumptive sentence of 86 months, based upon the aggravating factors found by the jury. Carse petitioned for postconviction relief, arguing that the district court erred by accepting his waiver of the right to be present at trial; by failing to define "particular cruelty" for the jury; and by failing to instruct the jury that to find "particular vulnerability" as an aggravating factor, it must find that Carse exploited the alleged vulnerability. The district court denied Carse's motion for postconviction relief, and this appeal follows.

## ISSUES

I. Did the district court err by accepting Carse's express waiver of his right to be present at trial?

II. Did the sentencing jury's special verdict provide sufficient factual support for Carse's aggravated sentence?

## ANALYSIS

Appellate courts "review a postconviction court's findings to determine whether there is sufficient evidentiary support in the record." *Dukes v. State*, 621 N.W.2d 246, 251 (Minn.2001). "The decisions of a postconviction court will not be disturbed unless the court abused its discretion." *Id.* (citation omitted). Issues of law are reviewed de novo. *Leake v. State*, 737 N.W.2d 531, 535 (Minn.2007).

Carse contends that the district court abused its discretion by denying his motion for postconviction relief. He claims that the district court lacked authority to

commence a trial in his absence and to excuse his attendance at trial. He also claims that the jury's findings of particular cruelty and particular vulnerability are insufficient to justify a departure from the presumptive sentence. We address each claim in turn.

## I.

■ "Like any constitutional right, the right to be present at trial may be waived by the accused," *State v. Cassidy*, 567 N.W.2d 707, 709 (Minn.1997). A defendant who voluntarily and without justification absents himself from trial after the trial has commenced waives his right to be present. *State v. Worthy*, 583 N.W.2d 270, 277 (Minn.1998) (recognizing right to be present at trial may be waived if done so competently and intelligently); *State v. Utecht*, 228 Minn. 44, 48, 36 N.W.2d 126, 128 (1949); *see also Pearson v. United States*, 325 F.2d 625, 626–27 (D.C.Cir.1963) (holding that the district court did not err in continuing the trial without defendant when the trial had commenced in defendant's presence, he vigorously expressed his desire to be absent, he was given ample opportunity to change his mind despite the disturbance he had created, he had competent counsel, and he knew of his right to be present).

In *Worthy*, the supreme court concluded that a district court did not abuse its discretion by proceeding with trial despite the absence of the two in-custody defendants. *Worthy*, 583 N.W.2d at 277. On the first morning of trial, the defendants' court-appointed attorneys informed the district court that the defendants had indicated that they would not participate in their trial. *Id.* at 274. After the first prospective juror was questioned, the district court brought the defendants into the courtroom. *Id.* The district court refused their request for a continuance whereupon

the defendants fired their attorneys, informed the court that they would not participate in the trial, and returned to their jail cells. *Id.* The supreme court stated that the defendants "must be held to have waived their right to be present." *Id.* at 278; *see also Cassidy*, 567 N.W.2d at 709 ("Courts will also imply a waiver from a defendant's conduct.").

■ Carse concedes that the constitutional right to be present at all stages of trial may be waived but argues that the district court was not authorized to accept his express waiver. Carse bases his argument on Minn. R.Crim. P. 26.03, subd. 1, which provides in relevant part:

(1) *Presence Required.* The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules....

(2) *Continued Presence Not Required.* The further progress of a trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to waive the right to be present whenever:

1. a defendant voluntarily and without justification absents himself or herself after trial has commenced; or

2. a defendant after warning engages in conduct which is such as to justify being excluded from the courtroom because it tends to interrupt the orderly procedure of the court and the due course of the trial....

(3) *Presence Not Required.* A defendant need not be present in the following situations: ...

2. in the case of felonies and gross misdemeanors, on defendant's motion,

the court may excuse the defendant from attendance at any proceeding except arraignment, plea, trial, and impositions of sentence[.]

"The interpretation of the rules of criminal procedure is a question of law subject to de novo review." *Ford v. State,* 690 N.W.2d 706, 712 (Minn.2005).

■ Carse contends that rule 26.03, subdivision 1(3)2, expressly prohibits a district court, in a felony case, from excusing a defendant's attendance at trial. When rule 26.03, subdivision 1(3)2 is read in isolation, it appears to support this contention. However, this section of the rule must be read in the context of the entire rule, which also provides that a trial will continue and "the defendant shall be considered to waive the right to be present" when "a defendant voluntarily and without justification absents himself or herself after trial has commenced," and when "a defendant after warning engages in conduct which is such as to justify being excluded from the courtroom because it tends to interrupt the orderly procedure of the court and the due course of the trial." Minn. R.Crim. P. 26.03, subd. 1(2)1, 2. Under these sections of the rule, a district court may consider certain conduct to be a waiver of the right to be present at trial. Given that the rule allows the district court to find a waiver based on conduct, we see no reason why a district court should not be allowed to accept a knowing, voluntary, and express waiver of the right to be present after trial has commenced. Thus, we interpret section (3)2 as allowing a district court to grant a defendant's motion to be excused from attendance at trial, so long as the motion is made after trial has commenced.

We note that this interpretation of the rule is consistent with caselaw. *See Worthy,* 583 N.W.2d at 277–78 (concluding that a district court did not abuse its discretion by proceeding with trial despite the absence of the defendants). Implicit in the supreme court's decision in *Worthy* is the presupposition that the district court had the authority to accept the defendants' waivers. Without such authority, the district court could not have properly proceeded with the trial in the defendants' absence.

■ Carse argues that he could not voluntarily absent himself from trial before the trial commenced. *See* Minn. R.Crim. P. 26.03, subd. 1(2)1 (stating that a defendant can voluntarily absent himself "after trial has commenced"). For purposes of rule 26.03, a trial commences when the jury is impaneled. *State v. Johnson,* 483 N.W.2d 109, 110 (Minn.App.1992), *review denied* (Minn. June 10, 1992). Carse contends that his trial had not commenced at the point when the district court accepted his waiver and excused his attendance, because the jury had not been impaneled. But "[i]mpaneling a jury includes all the steps of ascertaining who shall be the proper jurors to sit in the trial of a particular case." *Id.* (quotation omitted). "This includes several steps before the swearing of jurors, including voir dire." *Id.*

On the scheduled day of trial, the district court informed Carse that it was prepared to start the jury trial and that it was "going to conduct the jury trial one way or the other." The district court also informed Carse that the prospective jurors were "standing out in the hallway," and that the court was ready to bring them into the courtroom. The only reason that the district court did not bring venire into the courtroom for questioning in Carse's presence was because Carse refused to remain in the courtroom for that purpose. On these facts, we conclude that trial had commenced.

■ We also note that the reasoning behind the rule against trial *in absentia* relates to the importance of notice; the rule guards against involuntary deprivation of confrontation and testamentary rights due to lack of notice. *Johnson,* 483 N.W.2d at 110. In *Johnson,* the out-of-custody defendant was present for the questioning of veniremembers but absented himself without explanation before the jury was sworn. *Id.* We held that "[o]nce a jury was impaneled in the presence of the defendant, he had clear and unequivocal notice of the commencement of trial. Voluntary absence thereafter is a knowing waiver of constitutional rights." *Id.* Lack of notice is not a concern in this case. Carse had "clear and unequivocal notice of the commencement of trial." *See id.* As stated succinctly by the district court: "The minor difference between the defendant in *Johnson* being present for the commencement of jury selection and [Carse] knowing that the prospective jurors were standing out in the hallway is of little significance as it does not change the issue of notice as to commencement of the trial." Finally, we note that the defendants in *Worthy* were not present when the first prospective juror was questioned, yet the supreme court held that the district court did not err by conducting the trial in their absence. *Worthy,* 583 N.W.2d at 274.

■ Carse argues that in-custody defendants should be treated differently than out-of-custody defendants with regard to waiver of the right to be present at trial and suggests that an in-custody defendant should be forced to attend his or her trial. We disagree. When an in-custody defendant appears before the district court after trial has commenced, is advised of the right to be present, and expressly waives that right, a clear record of voluntary absence results and the district court can determine whether the absence is justified—unlike the situation in which an out-of-custody defendant fails to appear after trial has commenced and his or her absence is unexplained. The district court is allowed to imply a waiver based on conduct in the latter situation. *See Cassidy,* 567 N.W.2d at 709 ("Typically, courts will imply a waiver when a defendant is absent without explanation."). We see no reason why the district court should not be allowed to accept a defendant's express waiver in the former.

■ Moreover, when an in-custody defendant is present in court when trial commences and repeatedly states that he or she will not remain in the courtroom for the trial, it defies common sense to suggest that the district court should force the defendant to remain in the courtroom, against his or her will, thereby risking disruption of the orderly trial process—a result that was entirely possible given Carse's behavior—and likely resulting in a wavier by conduct under rule 26.03, subdivision 1(2)2. The provisions of rule 26.03, subdivision 1(2)1 and 2, which allow the district court to consider conduct to be a waiver, are not limited to out-of-custody defendants. An in-custody defendant can "voluntarily and without justification" absent himself or herself from trial by refusing to leave his or her jail cell. *See* Minn. R.Crim. P. 26.03, subd. 1(2)1. And a defendant's in-custody status does not prevent him or her from engaging in "conduct which is such as to justify being excluded from the courtroom." *See* Minn. R.Crim. P. 26.03, subd. 1(2)2. Carse's in-custody status has no bearing on our decision.

■ In summary, a district court is authorized to accept a defendant's knowing, voluntary, and express waiver of the right to be present at trial, so long as the waiver is made after commencement of trial. Carse made a knowing and intelli-

gent waiver of his right to be present after the trial had commenced. The district court provided Carse with a thorough explanation of his right to be present and made a similar inquiry regarding Carse's desire to waive that right. Carse voluntarily, and without justification,[3] made the decision not to attend his trial. The district court did not err by accepting Carse's waiver and excusing his attendance at his trial.[4]

## II.

■■■■■ The district court may, in the sound and proper exercise of its discretion, depart from the presumptive sentence, or from the permissible sentencing range, only if it identifies relevant substantial and compelling circumstances that warrant a different sentence. *State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981). Any departure that increases the severity of the sentence must be supported by at least one aggravating factor. *State v. Dominguez,* 663 N.W.2d 563, 567 (Minn.App.2003). "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000). An upward durational departure from the statutory maximum sentence based on a judge's findings, rather than those of a jury, violates the Sixth Amendment right to trial by jury. *Blakely v. Washington,*

542 U.S. 296, 301–05, 124 S.Ct. 2531, 2536–38, 159 L.Ed.2d 403 (2004).

The sentencing guidelines provide several reasons for aggravated departures. Minn. Sent. Guidelines II.D.2.b (2005). The district court relied on two in this case: "[t]he victim was treated with particular cruelty for which the individual offender should be held responsible," and "[t]he victim was particularly vulnerable due to age, infirmity, or reduced physical or mental capacity, which was known or should have been known to the offender." Minn. Sent. Guidelines II.D.2.b(1), (2).

Carse claims that the sentencing jury's findings are insufficient to justify a departure. His claim is based on alleged errors in the district court's instructions to the sentencing jury. Carse argues that the district court erred by failing to define "particular cruelty" and by failing to instruct the jury that to find the victim particularly vulnerable, it must find that Carse actively capitalized on or exploited the victim's vulnerability to commit the assault.

The supreme court's recent holding in *State v. Rourke,* 773 N.W.2d 913 (Minn. 2009) resolves Carse's arguments regarding the alleged jury-instruction errors. In *Rourke,* the defendant pleaded guilty to first-degree assault and agreed to an upward departure from the presumptive sentence. 773 N.W.2d at 916. Following appeals to this court and the supreme court, the case was remanded for sentencing consistent with *Blakely. Id.* On remand, a

---

3. Carse does not claim that he was *involuntarily* absent at any point during the trial. "Clearly, a defendant bears the burden of showing that his or her absence from trial was involuntary. That burden is a heavy one to meet, and rightly so." *Cassidy,* 567 N.W.2d at 710. Absent an argument to the contrary, we conclude that Carse was voluntarily absent from his trial.

4. It should be noted, however, that a district court is not required to accept a defendant's waiver of his right to be present and, particularly where identity is at issue, a defendant may be required to be present. *See United States v. Moore,* 466 F.2d 547, 547 (3d. Cir. 1972) (holding that the district court did not err by refusing to allow the defendant to absent himself from the trial at which his identification would be an integral issue).

*Blakely* trial was held and the district court submitted the following special interrogatories to the jury: "(1) Was [the victim] treated with particular cruelty ... ? and (2) Was [the victim] particularly vulnerable ... due to age, infirmity, reduced physical capacity, or reduced mental capacity?" *Id.* The jury concluded that the victim was treated with particular cruelty, but was not particularly vulnerable. *Id.* at 916–17. Nonetheless, the district court granted the defendant's motion for acquittal and vacated the jury's finding of "particular cruelty," based on its conclusion that the term "particular cruelty" was unconstitutionally vague and that district courts have no authority to provide jurors a definition of "particular cruelty." *Id.* at 917. The district court imposed a presumptive sentence. *Id.* The state appealed the sentence, and this court reversed the district court's conclusion that the "particular cruelty" aggravating factor is unconstitutionally vague and remanded for a new *Blakely* trial and resentencing, "with 'particular cruelty' to be defined to the jury consistent with *State v. Weaver,* 733 N.W.2d 793, 803 (Minn.App.2007)." *Id.*

The supreme court granted defendant's petition for review. *Id.* The supreme court framed the question presented as:

> [W]hether the aggravating factor of particular cruelty listed in Minn. Sent. Guidelines II.D is an 'additional fact' which must be submitted to the jurors in a *Blakely* trial or a 'reason' which explains why the additional facts provide the district court a substantial and compelling reason or basis to impose a sentence outside the range on the grid, and which [is] outside the purview of a *Blakely* jury.

*Id.* at 920. The supreme court concluded that "the particular cruelty aggravating factor is a reason that explains why the additional facts found by the jury provide

the district court a substantial and compelling basis for imposition of a sentence outside the range on the grid." *Id.* The supreme court explained:

> Although the rule announced in *Blakely* now requires that the facts of the case be found by a jury, it does not require us to abandon our view that the particular cruelty aggravating factor is a reason explaining why the facts of the case provide the district court a substantial and compelling basis for imposition of a sentence outside the range on the grid. We hold that a district court must submit to a jury the question of whether the State has proven beyond a reasonable doubt the existence of additional facts, which were neither admitted by the defendant, nor necessary to prove the elements of the offense, but which support reasons for departure. But the question of whether those additional facts provide the district court a reason to depart does not involve a factual determination and, therefore, need not be submitted to a jury.

*Id.* at 920–21 (footnotes omitted). The supreme court also provided guidance for the district court on remand, stating that

> if another *Blakely* trial is held on remand, the district court should submit to the *Blakely* jury one or more special interrogatories that ask whether the State has proven, beyond a reasonable doubt, a factual circumstance which the State alleges would provide the district court a substantial and compelling reason (i.e. particular cruelty) to depart from the presumptive guidelines sentence.

*Id.* at 923.

 *Rourke* is the law in Minnesota, and we are obligated to follow it even though the parties did not cite or argue it

on appeal.[5] *See State v. Hannuksela,* 452 N.W.2d 668, 673 n. 7 (Minn.1990) ("[I]t is the responsibility of appellate courts to decide cases in accordance with law, and that responsibility is not to be diluted by counsel's oversights, lack of research, failure to specify issues or to cite relevant authorities." (quotation omitted)). Under *Rourke,* the district court's failure to define particular cruelty was not error. However, the sentencing procedure was improper. Under the procedure described in *Rourke,* a jury should not be asked to determine whether or not an enumerated aggravating factor exists—that determination must be made by the sentencing judge. *Rourke,* 773 N.W.2d at 921. The jury's role is limited to finding facts that are relevant to this determination. *Id.*

■ Under *Rourke,* the special verdict finding in this case—"[t]he victim was treated with particular cruelty for which the individual offender should be held responsible"—is insufficient to support the aggravated sentence. The jury should have been asked to determine the existence of the particular facts that the state alleged in support of its argument that substantial and compelling circumstances justified a departure based on the particular-cruelty factor. After which, the sentencing judge should have determined whether a departure was warranted based on the facts found by the jury. Instead, the jury was asked to determine whether or not the particular-cruelty aggravating factor existed.

And while *Rourke'*s discussion of the proper sentencing procedure only concerned the particular-cruelty factor, the supreme court's reasoning applies to the particular-vulnerability aggravating factor as well. But the special-verdict form directed the jury to determine whether the victim was "particularly vulnerable due to reduced physical or mental capacity" (i.e., whether the particular-vulnerability factor existed) instead of asking the jury to determine specific facts that would support a conclusion, by the judge, that it was appropriate to depart for this reason. Under *Rourke,* the jury should not have been asked to determine the existence of the particular-vulnerability factor. *Id.* at 922 (stating that *Blakely* requires that the jury determine additional facts that a judge may rely on to support his or her explanation as to why substantial and compelling circumstances justify a departure).

As a result of the special-verdict inquiries in this case, the jury did not make specific factual findings upon which the district court could determine that an aggravated sentence was warranted based on the particular-cruelty or particular-vulnerability aggravating factors. The jury's special verdict findings are therefore insufficient to support an aggravated sentence under *Rourke.*

### DECISION

Because the district court properly accepted Carse's express waiver of his right to be present at trial, the postconviction court did not err by rejecting Carse's request for relief on this claim. Accordingly, we affirm his conviction. But because, under *Rourke,* the sentencing jury's special-verdict findings are inadequate to support Carse's aggravated sentence, we reverse his sentence and remand for further proceedings consistent with this opinion.

**5.** *Rourke* was decided after briefing but before submission of this case. Neither party brought the decision to this court's attention. *See* Minn. R. Civ.App. P. 128.05 ("If pertinent and significant authorities come to a party's attention after the party's brief has been filed or after oral argument but before decision, a party may promptly advise the clerk of the appellate courts by letter, with a copy to all other parties, setting forth the citations.").

**Affirmed in part, reversed in part, and remanded.**