*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1125**

State of Minnesota,
Respondent,

vs.

Mang Yang,
Appellant.

**Filed July 14, 2014
Affirmed
Chutich, Judge**

Ramsey County District Court
File No. : 62-CR-12-2359

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julie Loftus Nelson, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Johnson, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appellant Mang Yang appeals his aggravated sentence for his convictions of aiding and abetting kidnapping and first-degree criminal sexual conduct committed for

the benefit of a gang. He contends that his sentence should be vacated because the jury improperly determined that the victim was particularly vulnerable and because the district court improperly considered the sentencing factor of whether the offense was committed by three or more offenders. Because Yang cannot show that prejudicial error occurred in instructing the jury about the victim's particular vulnerability and because the district court did not rely upon any other aggravating factor to increase Yang's sentence, we affirm the sentence of 300 months.

**FACTS**

On November 17, 2011, appellant Mang Yang drove a 15-year-old girl, G.K., and two other young girls to Kong Meng Vang's house in St. Paul. The girls planned to hang out and go to a club later in the evening. Four to five males, including Yang, were also at Vang's house. Yang bought alcohol and encouraged everyone, G.K. in particular, to drink it. G.K. testified that Yang gave her alcohol to drink.

At some point the group left and went to Vang's other house in St. Paul where no one was currently living. One of G.K.'s friends left, and about six to nine boys and men were at this second house with G.K. and her remaining friend, A.Y. G.K. testified that she was intoxicated and that Yang also gave her alcohol at the second house.

G.K. decided that she wanted to leave, but Yang refused to give the girls a ride home. A.Y. noticed that because of G.K.'s intoxication G.K. was no longer able to walk on her own. A.Y. helped G.K. and put her in the back seat of Yang's car while A.Y. left to call for a ride.

2

At Yang's direction, two males from the house then pulled G.K. out of the car. G.K. did not want to go back into the house, and she "was struggling" and "trying to get loose" from the two males. She also held onto the door to try to stop them. Once inside the house, G.K. saw Yang in the living room and asked him for help, but he refused.

The boys dragged G.K. into one of the bedrooms in the house and "threw [her] on a mattress." She was still struggling and screaming to get away. G.K. does not remember who was in the room with her, but she was sexually penetrated by at least one of the nine men present, while others held her down. Three men who were later convicted for their roles in the sexual assault of G.K. said that Yang was in the room at the time G.K. was assaulted.

The state charged Yang with aiding and abetting first-degree criminal sexual conduct; aiding and abetting conspiracy to commit first-degree criminal sexual conduct; aiding and abetting kidnapping; and aiding and abetting one of these crimes for the benefit of a gang. *See* Minn. Stat. §§ 609.05, subd. 1, .175, subd. 2(3), .229, subd. 2, .25, subd. 1(2), .342, subd. 1(f)(i) (2010).

At Yang's jury trial, J.H., one of the boys who held G.K. down on the mattress, testified that Yang and others involved in the assault are part of the gang "TB22" and that the gang commits crimes such as "theft of autos, fighting, [and] raping." J.H. testified that, on the night of the assault, Yang planned with the others to rape G.K, that they were "trying to make the girl drunk," and that they wanted her to pass out so she would not "recognize who did what." J.H. testified that they decided to pull her out of Yang's car because she was drunk, sleeping, and tired. J.H. and two others held G.K. down on the

mattress, and J.H. saw one of the men penetrate G.K. He said that Yang told him to hold G.K. down.

Other co-defendants confirmed that the group planned to rape G.K. and that the plan unfolded similarly to how J.H. and G.K. described it. G.K. testified that she felt betrayed by Yang because she trusted him, but he did not help her.

A St. Paul police officer testified about interviews that he conducted with Yang. Yang admitted being at the houses with G.K. and the others on the night of the assault, that G.K. drank liquor and beer, and that "he knew the rape was going to happen." He told the officer that G.K. "wasn't that drunk at all" and that she "had maybe two shots or three drinks." In a later interview, Yang admitted he was in the bedroom.

The jury found Yang guilty of all four counts. Immediately after the guilty verdicts, the jury received two special-verdict questions about aggravated-sentencing factors: "1. Did the offender commit the criminal sexual conduct as a part of a group of three or more persons who all actively participated in the crime?" and "2. Was the victim particularly vulnerable due to the reduced mental or physical capacity, which was known to the offender?" The jury responded "yes" to both questions.

In March 2013, the district court sentenced Yang to 300 months in prison, an upward departure of 35 months. This appeal followed.

## DECISION

### I.    Particular Vulnerability

Yang asserts that the jury was improperly asked to decide a *legal* determination that should only be made by the judge: whether the victim was particularly vulnerable.

4

He now contends that the special-verdict questions should have addressed whether the state had proved certain *facts* beyond a reasonable doubt; for example, "(1) [W]as the victim intoxicated; (2) did the victim's intoxication impair her ability to seek help, fight back or escape harm; and (3) did the defendant know or should he have known of the victim's condition."

Because Yang did not object at trial to the special-verdict question on particular vulnerability, we review under the plain-error standard. *State v. Reed*, 737 N.W.2d 572, 583 (Minn. 2007). "The plain error analysis allows an appellate court to consider unobjected-to error that affects a criminal defendant's substantial rights." *Id.* (quotation omitted). Under this standard, "there must be (1) error, (2) that is plain, and (3) affects substantial rights." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). If these three factors are met, we then consider "whether the error should be addressed to ensure fairness and the integrity of the judicial proceedings." *Reed*, 737 N.W.2d at 583 (quotation omitted).

To impose a sentencing departure, a district court "must submit to a jury the question of whether the State has proven beyond a reasonable doubt the existence of additional facts, which were neither admitted by the defendant, nor necessary to prove the elements of the offense, but which support reasons for departure." *State v. Rourke*, 773 N.W.2d 913, 921 (Minn. 2009). Whether a person is particularly vulnerable is a sentencing factor for the judge to decide based on particular facts submitted to the jury. *Carse v. State*, 778 N.W.2d 361, 373 (Minn. App. 2010), *review denied* (Minn. Apr. 20, 2010). Here, the jury improperly decided the aggravating factor itself, instead of specific

5

facts that would support the aggravating factor. *See id.* Because Yang's trial occurred two years after *Carse* was decided, the jury question "[w]as the victim particularly vulnerable due to the reduced mental or physical capacity, which was known to the offender" was plain error.

But the district court's failure to submit factual interrogatories to the jury did not affect Yang's substantial rights. "To show that the error affected substantial rights, the defendant bears the heavy burden of showing that the error was prejudicial—that is, the defendant must show that there is a reasonable likelihood that the error substantially affected the verdict." *State v. Burg*, 648 N.W.2d 673, 677 (Minn. 2002) (quotation omitted).

If the questions Yang now suggests—whether the victim was intoxicated; whether her intoxication impaired her ability to seek help, fight back, or escape harm; and whether Yang knew or should have known of the victim's intoxication—had actually been submitted to the jury, the record shows that the jury very likely would have responded affirmatively. Witnesses, including G.K. herself, testified that Yang provided G.K. with alcohol, that G.K. was drinking beer and shots of hard liquor and had at least four to six drinks, and that G.K. was intoxicated. A co-defendant testified that Yang and the others planned to "make" G.K. drunk so that they could rape her, and they decided to pull G.K. out of the car because she was drunk and sleeping.

Yang argues that we must focus on "whether the level of the victim's intoxication reduced her mental or physical capacity to the point that she was unable to defend herself or prevent the attack." He contends that the evidence that G.K. was "kicking, fighting,

and screaming" during the attack shows that she was not intoxicated "to the point of" being particularly vulnerable. Yang overstates the factual showing necessary to invoke this aggravating factor. When a 15-year-old girl is intoxicated, her capacities are certainly reduced and her abilities to seek help, fight back, or escape harm are impaired. The law does not require that the victim be completely unable to seek help or to fight back to demonstrate "particular vulnerability." *See* Minn. Sent. Guidelines 2.D.2.b(1) (2011); *State v. Mohamed*, 779 N.W.2d 93, 98–99 (Minn. App. 2010), *review denied* (Minn. May 18, 2010).

Because Yang cannot show a reasonable likelihood that the jurors would have responded negatively to any of the factual interrogatories on intoxication had they been properly presented as he suggests on appeal, Yang has not met his heavy burden of showing that the error was prejudicial. *See Burg*, 648 N.W.2d at 677.

## II.  Three or More Persons

Yang claims that it is unclear whether the district court used the three-or-more persons factor as a reason to impose an upward departure and that any use of this factor was improper. The state contends, and we agree, that the district court did not use this factor when it imposed the upward departure and, therefore, no error occurred.

One of the permissible reasons for imposing an upward departure is that "[t]he offender committed the crime as part of a group of three or more persons who all actively participated in the crime." Minn. Sent. Guidelines 2.D.2.b(10) (2011). But "[t]he aggravating factor involving groups of three or more persons under section 2.D.2.b(10)

7

cannot be used when an offender has been convicted under Minn. Stat. § 609.229, Crime Committed for Benefit of a Gang." Minn. Sent. Guidelines 2.D.205 (2011).

The record is clear that the district court did not use the three-or-more-persons factor to impose the sentencing departure. At the sentencing hearing, the state specifically requested that the district court not use this factor. And when the district court sentenced Yang, it used only the particular-vulnerability aggravating factor as its reason for departing. On this record, we do not believe that the district court's statement "in light of all the other circumstances surrounding [the case]" suggests that it improperly relied on the three-or-more-persons factor. *See State v. Adell*, 755 N.W.2d 767, 772 (Minn. App. 2008), *review denied* (Minn. Nov. 25, 2008).

### III. Pro Se Argument

In his pro se supplemental brief, Yang refers to his right to be "fully advised about all plea offers and discussions." But he does not explain whether or how he was not fully advised. "We will not consider pro se claims on appeal that are unsupported by either arguments or citations to legal authority." *State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008). Because Yang does not provide any underlying facts or legal authority and no prejudicial error "is obvious on mere inspection," we do not consider Yang's pro se claim. *See id.* at 23 (quotation omitted).

**Affirmed.**